UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ELIZABETH GREEN,<br><br>Defendant | Crim. No. 17-CR-10374-ADB |

### GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by its attorneys, United States Attorney Andrew E. Lelling, and Assistant U.S. Attorneys Amy Harman Burkart and David J. D'Addio, respectfully submits this memorandum in advance of defendant Elizabeth Green's sentencing hearing on June 20, 2018. For the reasons set forth below, and based upon consideration of the advisory guidelines sentencing range ("GSR") and all of the sentencing factors identified in 18 U.S.C. § 3553(a), the government respectfully recommends that the Court impose a sentence of incarceration at the low end of GSR, to be followed by a 12-month term of supervised release.

**I.   Background**

On December 6, 2017, Green pleaded guilty to a one-count Information charging her with conspiracy to distribute testosterone, trenbolone, and other steroid compounds that are Schedule III controlled substances, in violation of 18 U.S.C. § 371. A summary of the organization and the roles of the other charged participants is provided below.

*A.   The Onyx Counterfeit Steroid Organization*

The Presentence Report ("PSR") accurately summarizes Green's conduct (PSR ¶¶ 69-71) as well as the conduct and respective roles of the other members the Onyx Counterfeit Steroid Organization.

Tyler Baumann and Phillip Goodwin were the co-leaders of the Onyx Counterfeit Steroid Organization. PSR ¶¶ 14, 16. Baumann and Goodwin have already pleaded guilty, and have admitted that they began manufacturing steroids using the "Onyx" label beginning in at least May 2015 and continuing until April 2017. *See United States v. Tyler Baumann*, 17-CR-10211-DPW; *United States v. Phillip Goodwin*, 17-CR-10209-NMG.

Goodwin ordered both the raw materials for the injectable steroids and the counterfeit labels and packaging bearing the Onyx trademarks from overseas suppliers. PSR ¶¶ 11, 16. Goodwin then manufactured and packaged the Onyx steroids at his home, which he shared with his girlfriend and four children. *Id.* While the Onyx-branded steroids were all injectable steroids, Baumann and Goodwin also obtained and sold other steroids in pill form ("orals"). *Id.* at ¶ 12.

Baumann marketed the Onyx products on social media, primarily Instagram, and arranged for the sale of the products using email. *Id.* at ¶¶ 11, 14. Customers paid for the steroids via money remitters such as Western Union and MoneyGram. *Id.* Baumann and Goodwin directed other members of the conspiracy to ship steroids to customers and collect the proceeds. *Id.* at ¶¶ 11, 14, 16. The members of the conspiracy who collected the illicit customer payments—including Green—used false identifications and spread the transactions across multiple remitter locations to attempt to avoid suspicion. *Id.* at ¶¶ 11, 69.

The organization was long running, national in scope, and very profitable. *Id.* at ¶¶ 11, 12. The sale of the Onyx-branded products alone exceeded $1.5 million dollars. *Id.* Based on the estimates of co-conspirator Baumann, the Onyx sales (injectable steroids) represented half of the business; the other half was oral steroids (pills). By any estimate, the Onyx Counterfeit Steroid Organization was a multi-million dollar illegal steroid enterprise.

In addition to the steroid operation, Goodwin and Baumann also conspired with Melissa Sclafani to launder the illicit funds generated by the organization. Together, Baumann and

Goodwin were co-owners of a tanning business in Beverly, Mass., called Wicked Tan ("Wicked Tan"). *Id.* at ¶ 16. Sclafani operated Wicked Tan, and assisted Baumann and Goodwin in using the business to hide proceeds of the illegal activity, by creating the impression that the money was revenue generated by the tanning business. *Id.* at ¶¶ 44-45.

      B. *Elizabeth Green's Role.*

Elizabeth Green's primary role in the organization was picking up steroid proceeds from money remitters at the direction of Baumann and her sister, Kathryn Green. *Id.* at ¶¶ 69, 71. Green used false names and identifications to evade detection. *Id.* Green picked up at least $260,000 in proceeds from the steroid organization. *Id.* at ¶¶ 69, 71.

      C. *The Status of Other Members of the Conspiracy*

On April 12, 2017, pursuant to a criminal complaint, six members of the conspiracy were arrested: Goodwin, Baumann, Kathryn Green ("K. Green"), Sclafani, Robert Medeiros and Petzke. Ultimately, only Goodwin and Petzke were indicted; the remaining defendants each pleaded guilty to Informations. Elizabeth Green was the last to be charged.

The charges against each of the defendants in these related cases are listed in the PSR at paragraph 6. On March 15, 2018, Judge Gorton sentenced K. Green to 12 months and one day of incarceration, followed by two years of supervised release. PSR ¶ 6; (17-CR-10210-NMG). Later that day, Judge Woodlock sentenced Baumann (who pleaded guilty to an Information charging conspiracy to distribute controlled substances; conspiracy to traffic counterfeit drugs; conspiracy to engage in money laundering; possession with intent to distribute controlled substances; and trafficking counterfeit drugs) to 10 years of incarceration, followed by three years of supervised release. PSR ¶ 6; 17-CR-10211-DPW. Sclafani was sentenced by Judge Gorton on April 25, 2018 to 12 months and one day of incarceration, after granting the government's motion for a downward departure pursuant to USSG § 5K1.1. *See* 17-CR-10185-NMG. Co-conspirators Brian Petzke and

Robert Medeiros have not yet been sentenced. Petzke is scheduled to be sentenced later in the day on June 20, 2018 before Judge Gorton; Medeiros is scheduled to be sentenced in July before Judge Talwani.

**II.     Advisory Guidelines Sentencing Range**

*The Applicable Guidelines Calculations*

The parties agree that the base offense level pursuant to USSG §2D1.1(c)(10) is 20.

The parties have differing views with regard to what adjustment, if any, is appropriate based on Green's role in the organization:

- The government takes the position that Green is entitled to a two-point decrease based on her role in the offense, in accordance with USSG § 3B1.2(b).

- Green takes the position that she is entitled to a four-point decrease based on her role in the offense, in accordance with USSG § 3B1.2(a).

- The United States Probation Office takes the position that Green is not entitled to an adjustment for her role in the offense.

The parties agree Green is entitled to a decrease for acceptance of responsibility under USSG § 3E1.1(a), and a further reduction under USSG § 3E1.1(b) if her offense level is 16 or greater.

The parties agree that Green meets criteria 1-4 of USSG § 5C1.2, and the government believes that she also meets criterion 5. Thus, a further two-level reduction in her offense level is warranted under USSG § 2D1.1(b)(17).

There is no dispute that Green falls within Criminal History Category I.

*Role Reduction Adjustment*

Green is charged only with participating in the steroid distribution conspiracy—the lowest-level conspiracy in the organization. In contrast, other members of the organization were charged with conspiring to traffic in counterfeit drugs and conspiring to launder the proceeds of

the steroid organization, among other substantive charges.  Thus, the charges in the case already reflect the more limited culpability of Green as compared to her co-conspirators.

The government agreed in Green's plea agreement, and in her sister's, to take the position that they are each entitled to a two-level decrease based on their limited roles.  As a matter of consistency, the government intends to take the same position with regard to Petzke at his sentencing.  The roles of each of these defendants is similar, and there is no basis for a further reduction for any of them.

### III. A Guidelines Term of Incarceration for Elizabeth Green is an Appropriate Specific and General Deterrent

Green was an active member of an illegal steroid distribution organization for approximately a year and a half, from November 2015 to April 2017.  She knew her actions were illegal, and she took active steps to evade law enforcement—most notably by using a series of false identifications to pick up steroid proceeds.  Green, and the others that picked up the illegal steroid proceeds, provided critical logistical support to the enterprise.  Green knew she was participating in illegal organization, and she chose to do so.  As a matter of both general and specific deterrence, and in order to promote respect for the law, Green should be sentenced to a guidelines term of incarceration.

## CONCLUSION

For the above reasons, the government asks the Court to impose on Green a term of incarceration at the low end of the applicable guideline sentencing range, to be followed by a 12-month term of supervised release.

                                        Respectfully submitted,

                                        ANDREW E. LELLING
                                        United States Attorney

By: */s/ Amy Harman Burkart*
      David J. D'Addio
      Amy Harman Burkart
      Assistant U.S. Attorneys

Dated:  June 20, 2018

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

                                             */s/ Amy Harman Burkart*
                                             Amy Harman Burkart
                                             Assistant United States Attorney

Date:  June 20, 2018